[Crim. No. 657. First Appellate District.—June 4, 1917.]

THE PEOPLE, Respondent, v. COMPTON VAUGHAN, Appellant.

CRIMINAL LAW—MURDER—REMARK OF COURT TO JURY—RECOMMENDATION OF MERCY—LACK OF PREJUDICE.—In a prosecution for murder, a statement made by the court in answer to a question asked by the jury after they had deliberated some hours, as to whether a recommendation of mercy would be followed if made, that it was their duty to return a verdict and that they had an absolute right to make a recommendation, followed by the explanation that, except in the case of a verdict of murder in the first degree, the court would not be compelled to follow the jury's recommendation, is not to be taken as a coercion of the jury in returning a verdict, as when taken in connection with the instruction that the jury were the sole judges of the facts, it meant no more than that the finding of a verdict rested with the jury.

ID.—CONSIDERATION OF TESTIMONY OF DEFENDANT—INSTRUCTION.— Where the testimony of the defendant did not differ materially from that of other witnesses, and was sufficient of itself to justify his conviction, the refusal to instruct the jury specially as to how they should weigh the testimony of the defendant is not a ground for reversal, where the instructions given stated the rules as to the weighing the testimony of all witnesses.

ID.—MATTERS STRICKEN OUT—DISREGARD BY JURY—INSTRUCTION.— The refusal to give an instruction that the jury must disregard answers stricken from the record and must draw no inferences from what they might think to be the court's opinion as to the weight to be attached to the evidence or the credibility to be given to a witness, is without prejudice, where the jury was instructed that

they were the sole judges of the facts, and that the court had nothing to do with the questions of fact or the credit to be given witnesses.

APPEAL from a judgment of the Superior Court of Alameda County, and from an order denying a new trial. J. J. Trabucco, Judge presiding.

The facts are stated in the opinion of the court.

H. S. Henion, and R. McMurchi, for Appellant.

U. S. Webb, Attorney-General, and John H. Riordan, Deputy Attorney-General, for Respondent.

BEASLY, J., *pro tem.*—The defendant was convicted of murder of the second degree for killing George Barnet at Calaveras dam, in Alameda County, on June 15, 1916, and appeals from the judgment and from an order denying his motion for a new trial.

The first point made on this appeal is that the evidence is insufficient to support the verdict of murder of the second degree. With this contention we cannot agree. The deceased and the defendant quarreled over a card game, of which the defendant was the banker. During this quarrel the defendant got possession of a small sum of money which he admits belonged to the deceased. The two men separated after hard words had passed between them. The defendant armed himself, and the men met in a bunk-house where both slept, and renewed the quarrel. After some violent language, in which both indulged, the deceased either struck or shoved the defendant, and the latter fell to the floor against the wall. On regaining his feet the defendant fired a shot into the floor. He then brought his arm up slowly and fired two shots into the abdomen of the deceased, killing him. The deceased was unarmed, and the defendant knew this. The men were of about equal weight and physical strength. It is clear from the evidence that the defendant was in no danger of any serious injury at any time, and that he could at any time have stopped the trouble by paying back to the deceased the small sum of money in his possession which he admitted belonged to the deceased. The jury were fully justified in finding from the evidence—indeed, it would be difficult to believe

34 Cal. App.—2

otherwise—that defendant provoked the quarrel by cheating deceased in the card game, and that he did not retire from the quarrel when he had ample opportunity to do so. There were other facts in evidence, but none which weakened those stated. Whether these facts showed murder of the second degree was a question for the jury. The evidence is sufficient to sustain a finding that the defendant killed Barnet unlawfully and with malice aforethought.

Appellant complains that the district attorney was permitted to ask him when a witness in his own behalf whether at any time he considered that he had done wrong in killing Barnet. He answered "No." In effect this was saying that he always considered his conduct justified and free from blame. He could not have been prejudiced by this answer.

After the jury had deliberated for some hours they asked the court whether a recommendation of mercy would be followed if made by them. In reply the court made this statement: "The proposition is this, gentlemen: It is your duty to find a verdict, and you have an absolute right to make a recommendation." The court then explained that except in case of a verdict of murder in the first degree, the court would not be compelled to follow the jury's recommendation. The explanation was elaborate and accurate, and at its end, in response to a question by the foreman, the court stated that if the jury should find the defendant guilty of murder, and there should still remain a reasonable doubt as to the degree of the crime, they must find the lowest degree. The defendant complains that by the language first above quoted the court coerced the jury into returning a verdict. We do not so understand it. Taken with its context and the instruction previously given that the jury were the sole judges of the facts, it seems to us that this discussion between the court and the foreman of the jury meant no more than that the matter of finding a verdict rested with the jury.

The further complaint is made that the latter part of this instruction, in which the court told the jury that in case of a reasonable doubt as to the degree of the crime they must find the lower degree, indicated to the jury that they were expected to return a verdict of murder. We do not so interpret it. It would be straining the language of the court to put such a construction upon it. It was a correct statement of the law, and at the time and under the circumstances in which it was

given was favorable rather than unfavorable to the defendant.
It must be read with all the other instructions; and the court
instructed the jury fully as to the verdicts of "guilty" which
might be found by them; and they certainly could not have
misunderstood this instruction, which was made necessary,
indeed, by the questions asked by the foreman.

This disposes of the questions presented upon the oral argu-
ment.

The defendant in his brief complains that many instruc-
tions asked by him were not given to the jury, and that several
instructions given on the court's motion were erroneous.

The court refused to give an instruction requested by de-
fendant to the effect that the jury must disregard answers
stricken from the record, and must draw no inferences from
what they might think to be the court's opinion as to the
weight to be attached to the evidence or the credibility to be
given to witnesses; but the court instructed the jury that they
were the sole judges of the facts, and that the court "had
nothing to do with the questions of fact or the credit to be
given witnesses," and our attention is not directed to any
answer stricken out which is of such character as to make
necessary the giving of that part of this instruction relating
to answers stricken from the record. Nor did the court, so far
as we can find from an examination of the record, at any time
in any way indicate that it had any opinion as to the weight
to be attached to the evidence of any witness or as to the cred-
ence to be given any witness. Indeed, the instruction above
quoted, that the court had nothing to do with the credibility of
the witnesses, or the weight to be attached to their testimony,
completely answers the objection that the defendant was
prejudiced by the court's refusal to give this instruction.

Complaint is made of the refusal of the court to give de-
fendant's proposed instruction numbered 10. With the ex-
ception of a single sentence, this instruction was embodied in
the court's own instructions. Defendant now claims that by
omitting this sentence the court left the jury uninstructed
upon an important distinction between murder and man-
slaughter. The entire instruction from which this sentence is
taken was devoted not to distinguishing between murder and
manslaughter but between the degrees of murder. This sen-
tence in its context had nothing to do with manslaughter, nor
would the jury have so understood it had it been given. It

was directed solely to the distinction between murder of the first degree and of the second degree. As the defendant was convicted of the lesser degree of murder, he was not prejudiced by the failure of the court to give this instruction to the jury.

Defendant's instruction No. 13, which the court refused to give in the language proposed, was given in every proper detail, although in other language, in the court's instructions. It may be further observed that this instruction as proposed by the defendant was presented in language so broad and in form so argumentative, when considered in connection with the evidence, that the trial court may well have considered that in the state of the evidence in this particular case it was calculated to cause the jury to think that the court believed the defendant to have killed Barnet in self-defense, and so to have committed the homicide in defending himself. The same may be said as to defendant's proposed instruction No. 16. The court briefly but accurately instructed the jury upon the law of self-defense, and that part of the instruction where the court was asked to say to the jury that they "were not bound to draw nice distinctions from appearances" 'was well suited to lead the jury to infer that the judge thought technical reasoning upon the evidence necessary to reach the conclusion that the defendant was guilty; whereas in this case the evidence was clear, and no nice or close reasoning was necessary to a decision that the defendant was guilty.

An instruction was also requested in which, directing attention specifically to the defendant, who was a witness in his own behalf, the court was asked by him to recite to the jury the rules under which they should consider his testimony. This instruction the court did not give, but stated the same rules in its instructions given to the jury as to how they should weigh the testimony of all witnesses. This case will not be reversed because the defendant was not singled out nor the jury directed to him, particularly when the court recited the rules under which the evidence of all witnesses was to be considered. One part of this instruction is usually given, viz., "that the defendant's testimony should not be rejected simply because he was the defendant." But we do not think the failure to give this instruction in this particular case prejudiced the defendant in any substantial right, for the reason that the defendant's testimony did not differ materially from that

of the other witnesses, and was sufficient of itself to justify his conviction of murder of the second degree.

The instruction given as to the right of a person when assailed to stand his ground, taken together with and considered in the light of the evidence, correctly stated the law upon that point and left nothing to be desired on the part of the defendant.

The other instructions complained of need no discussion. The court committed no prejudicial error in giving them.

The judgment and order are affirmed.

Richards, J., and Kerrigan, J., concurred.